The next case on our calendar is Keller versus Schoharie County. We're looking for Vincent Uba, who's the attorney for Cheryl Keller. Yes, there you are. Yes. Good morning, your honors. Two days ago, the whole the world celebrated Mother's Day. My client is here because the Appalachians have robbed her of her role as a mother, a role that is so fundamental, that is protected by our constitution. The Appalachians robbed her of this role by getting involved, doing their job as social workers, but then going beyond that by telling her daughter, her minor daughter, I still can't reason why that conversation would come up, telling her minor daughter that my client Keller has mental health issues and should be on medication, but is not. The Appalachians did so many other things that impeded and severed my client's relationship with her only child. Your client and the child did not have a picture book mother-daughter relationship before this began, did it? Yes, I would agree with that and I would also state your honor, I am a father, many of us are parents, there is no perfect parent-child relationship. Right, but there are relationships that fall within a range of normal. And was this a normal relationship, given the fact that there were orders of protection issued against your client, keeping her away from the child? Your honor, the orders of protection came about by the actions of the defendant, of the Appalachians in this case, as alleged in the complaint. But counsel, isn't this a typical state dispute? A dispute within state law of custody, of protective, of all the sorts of things that come up in state court. And in the context of this state dispute, Appalachians made some statements, did some things which you're complaining about, but they can only create a federal case if what they did was shocking in our case, shocking really beyond anything. And it's hard for me to see that what they did, even saying she should have been on medication and so on, is that shocking? This is basically a state dispute and I'm not sure how and why we can get involved. Your honor, as this court has ruled in so many cases, in Madison, in so many cases, when a person is branded as a mental health, as having mental illness, that is a stigma that sticks with that person. And that is what my client is suffering from up until now, even with her daughter being an adult child. And the only way she can vindicate her right is by what she's doing right now. Because there was no, I don't do adult mental health law, but I know that there's, I believe there's a procedure for declaring someone mentally ill. But that's what they did to my client. And it has severed her relationship with her minor daughter. The police interfered with that relationship. Yes, they can do their custody stuff. Yes, they can do everything, but not the extrajudicial. This case is very much in line with this court's case in Patel, where the policeman in that case attacked the relationship directly. That is what our police have done in this case. And your honor, I don't believe that it would be right for us, for the court to say that it's okay for a government official to tell a child that the mother has mental illness. That is what she did. That is what the police did. And that is branding. That is a stigma. This court has ruled repeatedly, over and over, that that is not right. It's not right to brand someone that they have mental illness. It's a stigma. It will disrupt that person's relationship with people that are close. It has made her daughter afraid of her from when she was a minor, and still continues. So, your honor, saying that we don't have a recourse in federal court, with all the facts that is alleged in the complaint, including the withholding of information that from the start was favorable to my client, including that, saying that we don't have a cause of action in federal court, is like saying that a criminal defendant, after a police officer fabricates evidence, or withholds favorable information, and the person gets convicted, that the person should not have any recourse in federal court. And that's exactly what happened here. That is what the complaint alleged. So, your honor, respectfully, again, with the second cause of action, which is for violation of our constitutional rights to privacy, the district court had ruled that mental illness is not protected. But it is protected. This court is clear about that. This court ruled that clear in Maxine, in Doe, that mental illness is protected. This court cited a thesis that was written by a mental health professional that talks about the stigma that is attached to mental health. And that is what they did to her child. That is a disruption of a parent-child relationship. Counsel, your client is not seeking a relationship now with her daughter, correct? She is, your honor. Is that part of your complaint? Well, our complaint says that the relationship is irreparably damaged right now. The only way we can begin to repair that is to at least to get to the mind of the daughter, to say, your mother is not mentally ill. Answer my question. Yes, your honor. She's seeking, in your complaint, relief in the form of a relationship with her daughter. No, we're not seeking that because I don't believe that the court can order that. You know, that's something that can be worked out. We're not seeking a relationship with her. The daughter is now not a minor, correct? No, she's not a minor anymore. Thank you. Thank you. Okay, you may conclude. Yes, thank you so much, your honor. So the district court had ruled that mental illness is not covered. Well, respectfully, that was error. Mental illness is covered. You know, the district court had said that they didn't have access to my client's medical records. That, again, is belied by the record. The complaint contains various paragraphs talking about how they were referred to psychological evaluation, trying to provide services for the family, and stuff like that. And on the complaint, too, there's record that the defendants have done this to so many other families, this particular two defendants. So I respectfully submit, and I ask your honors, that we should not fold our hands and say that it's okay for a social services protective worker to say without basis to a child, your mother has mental illness, and then to see the effect of that. Counsel, your time has expired, but you have reserved two minutes for rebuttal. We'll hear from the Scowcarrick County Department of Social Service counsel. Are you muted? We're not hearing you. You're muted. Unmute your... Counsel, unmute your device. Yes, thank you. Well, no, we still can't hear you. Try again. We can't hear you. Now it looks like you're muted on my screen. So unmute it and try again. Can you try making it louder? Can you try raising the volume? Sorry, this is the courtroom deputy. Ms. Jelena, can you hear me? Yes. Open the tab where the microphone is. Open it up and see if you have another microphone to select. She was fine when she checked in, your honor. Can you hear me now? Oh, I think we heard her now. Can you hear me now? Yes. Okay, great. I apologize for that. I have had some issues with the audio on my computer where if I mute it and I try to unmute it for whatever reason, I cannot be heard. So I proceed with the argument. I apologize for that. So again, may it please the court, my name is Lorraine Jelinek. I am the counsel for the appellees in this case. I do not believe that the appellees have that much more to add that has not already been said in their papers. Obviously, as the court can see from the record evidence and from the district court's decision, the complaint in itself, the district court had found that the appellate was in violation of both federal rule of civil procedure rule eight, as well as rule 11. Counsel, you're not defending that one of the employees of the Department of Social Service told the plaintiff's daughter that she had mental health issues. You're not defending that breach if it was a breach. I most certainly am not saying that it was a breach of any obligation or any responsibility on the part of the DSS caseworkers. I think the most significant part to address with regard to the second cause of action, the right to privacy claim is that there was no disclosure of any medical records or any documentation here. As the district court properly held, the DSS caseworkers were not providing mental health services or were they providing any type of mental health counseling for this mother and her daughter. They were doing their jobs to help facilitate counseling through the psychologist that the family had been seeing, but with respect to the individual DSS caseworkers opinion or a comment regarding her personal opinion as to the mother or the plaintiff in this case, that is clearly not medical record or documentation that would constitute a federal violation here. So that's really what we have to say in response to that. The amended complaint by the plaintiffs themselves had alleged or had admitted that the DSS caseworkers were not providing mental health services to the plaintiff or her daughter. And the court, as we had emphasized in our brief, has found medical or serious medical conditions with respect to things such as HIV or been cited by the appellate, nor that I am aware of, that would say that a comment or an opinion by a non-treating mental health counselor would constitute the type of conscious shocking behavior that would rise to a federal constitutional violation. There's just nothing that's just that didn't occur here. So the social worker, the caseworker said to the daughter, your mother's crazy or something like that. Her opinion. Right, right, right. Do you think that sounds, is that very professional? I wouldn't, I wouldn't say that it's professional in the sense, I believe that the district court had categorized the comment as being unwise. But again, I think the more significant issue here is that the plaintiffs, as plaintiffs had just described it, that the notion that that single opinion or comment had robbed this mother of her parental relationship with her daughter is, is absurd. As you can see from the record evidence, this had gone back to 2012. And there were domestic disputes that occurred between the mother and her daughter for years prior to the DSS caseworkers even being involved. As you can see from the record, there were over the course of this family court proceeding, there were three orders of protection that were issued against the plaintiff in this case, in an attempt to protect her daughter, all of which the plaintiff had violated, two of which were complete stay away orders. And the third violation of which ultimately resulted in her being arrested and criminally prosecuted for those violations. So, so really, the notion that this one comment by a DSS caseworker regarding her opinion on whether or not the plaintiff was crazy or not crazy, is just absurd when you take into consideration the context of the years of abuse and neglect on even prior to this, to this one comment being made. The other thing I would note is that even the initial neglect and- Is your argument that a third party who was not treating the mother could say anything to the child and that that would not give rise to a federal claim? No, Your Honor, that's not our argument here. Our argument is simply that the DSS caseworker's comment regarding her opinion on whether or not someone, you know, may be crazy or not crazy is simply and clearly does not rise to the level of conscious shocking behavior that would constitute a substantive due process right to privacy claim. And in addition, as Your Honors had mentioned before, there was obviously the opportunity for the plaintiff to have brought an Article 78 proceeding contesting any of the decisions from the family court. That did not happen here. Ms. Keller did not bring an Article 78 proceeding. She did not commence any action in state court. And our argument simply is that there are absolutely no allegations that were alleged in this complaint that would rise to any conscious shocking behavior on the part of the individual DSS caseworkers. Thank you. Thank you. Thank you. Mr. Oba, you have two minutes for rebuttal. Thank you so much, Your Honors. May it please the court once again. My Leonard opposing counsel had mentioned that one singular time that she made that statement, but there were more than once that she made the statement to the, to the child, to a young child, your mother has mental illness. And the science is clear, psychologically, and common sense tells us someone that you believe has is authoritative tells you that someone has mental illness. But clearly, in that situation where there's a rocky relationship or a lack is can be typical with teenagers and their parents. And then drums it into your head, it creates a stigma. He branded my client as a mentally ill person that could not have a relationship with her daughter. That is what he has done. So again, the my opposing counsel mentions the orders of protection. And again, I ask, if a prior proceeding state court precludes any other suit for violation of civil rights, there's so many, so many cases under civil rights will not be take place because there's so many criminal cases that are prosecuted. But the defendants are sued for something that they did in connection with that. And that's exactly what happened here. And so what's the remedy you seek in this court? The remedy that we seek with my client is changed for damages. For what they've done to her. She is she is she's presently getting counseling. I mean, the trauma of losing your child is what she's going through. And that is a right that we ought to protect that I'm asking the court to protect. That is a secret relationship. Is it damages from the remarks or remarks that what you're claiming? Yes, your honor, the damages from the remark, the damages from all of their concerted efforts. But the remark tells the story and brings out the evidence of what they did. And I will respectfully ask your honors that have great authority. I don't believe that your honors will tell a defendant in court. Your father has mental illness. Your mother has mental illness. Thank you, counsel. Your time has expired. Thank you. We'll reserve decision. Thank you. I will. Our last case. Oh, we heard you this time. We did. Yes. So I said it starts working right at the end to adjourn court. Thank you. Thank you so much.